U.S.A. v. Erik McCoy and Derek Hurd. Oral argument is not to exceed 15 minutes to be shared by the defendants and 15 minutes for the plaintiff. Mr. Hindi, you may proceed for the appellant. Good morning, and may it please the Court, Mitchell Hindi on behalf of the United States, I would like to reserve four minutes for rebuttal. In United States v. Leon, the Supreme Court held that for the exclusionary rule to apply the benefits of appreciable deterrence of police misconduct must outweigh the substantial social cost of suppressing inherently trustworthy evidence. That is to say that when officers act in objectively reasonable reliance on an approved warrant, suppression is unwarranted. And this case lies within the heartland of that exception because the affidavit supporting the authorized warrant at issue here reflected substantial police investigation corroborating an informant's tip that the residence to be searched was being used in illicit drug activity. The district court committed legal error in suppressing the evidence obtained pursuant to the Hadley Road search warrant because it refused to apply the Leon good faith exception. Specifically, when evaluating whether suppression was appropriate, the district court mistakenly read the affidavit as a critic with a divide and conquer approach focusing on what was missing or could have been added rather than, as this court has instructed, reading it reasonably. That is to say holistically in view of whether the totality of the circumstances provided any modicum of evidence, however slight, connecting the premises to the illegal drug activity. Properly viewed, this affidavit certainly passes muster. It contains a witness's explicit allegation that drugs had been observed in the residence. That witness, as the affidavit itself makes plain, had been proven reliable in that same allegations, including herds selling of marijuana from the Glenway Avenue business, had been corroborated that very day. While the district court cast aside the informant's information, even a well-trained officer holding an approved warrant in hand is not expected to second guess the weight as opposed to the existence of evidence suggesting a nexus to the place to be searched. That's the teaching of the cases such as White and Hines. Any evidence, however slight of a connection between the criminal activity and the place to be searched, is sufficient to support reasonable reliance on the warrant. This factual predicate supports the application of the long-established and accepted inference by this court set out in cases such as Kenny, Miggins, Williams, and more recently in White that a defendant engaged in drug activity can be presumed to store the contraband in his home, particularly where other facts known to the police also cast suspicion on the residence. That is because the affidavit reflects the officer's knowledge not only that the defendants had drug-trafficking criminal histories and that Herd was arrested on that very day with but also that an informant had personally seen the contraband inside the home, thereby setting this case apart from the decision in Brown that the district court mistakenly relied on below. As the Supreme Court held in Leon, such reasonable good-faith reliance on a search warrant is precisely what makes suppression unwarranted. Leon instructs that the flagrancy of police misconduct is relevant to the exclusion calculus, but here there is nothing of the sort. The Hadley Road affidavit reflects fresh, substantial police investigation that corroborated the informant's information. As in Hines, the facts here do not suggest any fears of police misconduct, but go directly to that reasonable reliance. A well-trained officer could rely on the magistrate's approval here, given that the affidavit contains two forms of nexus to the Hadley Road premises. Counsel Judge Guy, does it make any difference that the officer securing the search warrant is also the affiant and also the person who executes the search warrant? In other words, he's got a good-faith reliance on his own affidavit in some respects. Your Honor, I believe in the decision in Hines, the court held that the fact that the same officer secured the warrant and participated in the execution of the search is rather irrelevant to the application of the good-faith exception. It doesn't bar application just because the same officer participated in both. The question is whether the four corners of the affidavit, combined with the information known to the magistrate, provided any connection or any modicum of evidence tying the premises to be searched with the criminal activity. Thank you. The defendants here do not... I'm sorry? The defendants here do not even attempt to label this affidavit as bare bones, as the information it contains is certainly not of a conclusory or unfounded nature. On the contrary, the warrant here involves a latticework of interwoven strands of information supporting a well-trained officer's reasonable reliance. It contains several specific factual allegations, not mere beliefs or conclusions, tying the defendants' criminal activity. That's what sets this case apart from the cases relied on by the defendants, such as Weaver and Helton. Those cases, as this court has said, presented classic bare-bones affidavits that were unsupported by any meaningful police investigation. Not so here. Now, the panel directed the parties to United States v. Kenney, and that case supports the As in Kenney, the officers here had sufficient reason to believe that the search of the residence would reveal evidence of the drug crimes, in large part because Hurd was arrested that very day in possession of marijuana, and the police investigation corroborated the tip that Hurd resided at the Hadley Road residence. Just as Kenney distinguished this court's earlier case in McPherson, so too did the page 28 of our brief, because the affidavit confirmed that there were facts that tied Hurd to actual drug trafficking, as opposed to simple possession. The affidavit set out that both defendants had prior trafficking offenses, and that the informant alleged that they were currently involved in trafficking, and that was corroborated by the arrest on the same day as the search. Now, the defendants may argue that more allegations of trafficking in the residence itself is necessary, but that flies in the face of the decisions in Kenney and the accepted inference that at the very least, once police know a suspect is actively involved in drug activity, there is reason to believe such contraband will be found in his residence. Moreover, as the recent Hines decision makes clear, even when officers corroborate innocent activity from an informant, that can be sufficient to render other information in the tip credible, and that's exactly what happened here. Other allegations made by the informant were corroborated in significant part on that same day. The Hadley Road affidavit was supported, therefore, by a substantial current and fresh police investigation that tied the defendants to the residence, and both to illegal drug activity. A neutral judge presented with these facts found that there was probable cause for the search. Under Leon and this court's precedence, and given the existence of supporting factual allegations showing a nexus to the premises, the Cincinnati police officers were permitted to reasonably rely on that approved warrant. The district court therefore- Counsel? Yes? Counsel, this is Judge Batchelder. So, have you conceded that there was not, in fact, probable cause to search the residence? Your Honor, we have not conceded that. We, as we explained in the brief, we think that's admittedly a thornier question, and below in the district court, we certainly argued that probable cause supported the warrant, but it's not necessary for this court to reach that question, given the clear applicability of the Leon exception. It's admittedly a much more thorny question. I think reasonable minds can differ on that, but that is unnecessary to resolve this case and to require a reversal. Thank you. Unless there's any further questions, I'll reserve the remaining balance of my time. There are not. Thank you, Counsel. Thank you. Good morning, Your Honor. This is Jim Kalenick for appellee Eric McCoy. Obviously, we take issue with much of the government's presentation. This case, as the district court found, involves an affidavit that is both insufficient on its face and does not qualify for the Leon exception raised by the government. The reason being, and again, as the district court found, that the government, or the affidavit, failed to establish or to tie the two defendants to the residents, the Hadley Road residents, which is required by the cases relied on by the government. The Kenny case that the court referred us to is specifically distinguished by the Brown case, U.S. v. Brown, in 2016, on the grounds that the Kenny case had far more corroboration than a case such as this one and also involved major weight. In the Kenny case, methamphetamine, not only distribution but the actual laboratory, the manufacturer of the methamphetamine, was the building where the defendant was standing right outside of when arrested by the police in Kenny. Other cases cited by Brown in its footnote too are, of course, Miggins, which involved over a kilogram of cocaine intercepted by mail in Los Angeles, and U.S. v. Gunther where there were numerous recorded conversations between the informant and the defendant. Here we've got none of that. We've got an anonymous informant, his first use by the police, and he does not tie either co-defendant to that resident. All they've got is the Mr. Hurd's car outside the residence and a piece of mail from my client, Mr. McCoy, found inside the residence or somewhere in the case that does not have an address. They know the government doesn't tell us what address is on that piece of mail. The informant does not allege that he saw any trafficking at the residence, only that the other two are drug traffickers. There's no controlled buys that I'm aware of. The only actual contraband found on anybody is my client's co-defendant, who was found with a small quantity of marijuana by police at a different location, nearby location. Other deficiencies or defects are that there is nothing in the record that I'm aware of, or at least the record on appeal, that establishes how stale or how long ago the conviction for either defendant is. In Brown, it was found relevant that the drug trafficking conviction of that defendant was 12 years old. In other words, it was stale and was not of any help to the government in its search warrant efforts. So this case has literally none of the things that have been found sufficient in other Leon exception cases. The defendants aren't tied to the residence at all. There's no trafficking alleged to be going on at the residence. There's no contraband package for sale, no controlled buys, no major weight, major operation, and no evidence that these men have been convicted of trafficking within a timeframe the courts have found not to be stale. So that being the case, the district court's reasoning is sound. It relies on proper precedent. The Kenny case is distinguished, and the district court should be sustained. Thank you, Your Honors. Thank you. May it please the court, Travis Dunnington, I represent the appellee, Derek Hurd. The affidavit in this case contained no direct evidence to demonstrate Mr. Hurd even lived at the Hadley residence. When he was found miles away from the home in possession of a quantity of marijuana in his pocket that was so small, he could not even be arrested for it alone. It was a minor misdemeanor. The atemporal and acontextual anonymous tip that tied him to the Hadley house did not demonstrate any sort of a reliable connection that would then produce a belief in the mind of a reasonable officer that there would presently be contraband found at the Hadley home. In response to the government, Mr. Dunnington? This is Judge Boyce. So you had said there was no tie between your client and the home, or no evidence that he lived at the home. Was that what you said? Yes, no reliable evidence, exactly. Okay. But there was the confidential informant who said that he lived at the residence. Well, that was going to be my next point, Your Honor. This was not a confidential informant. This was an anonymous tipster. And the case law, the line of cases here points out there's a big difference between the two. We have an anonymous tipster here where there's no indication that the officer knew the name, certainly no indication that the name was known, and that makes a big difference because somebody who's anonymous doesn't have the same fears of prosecution if they give bad information. Also, that person isn't subjecting himself to criminal prosecution by way of disclosing what they've seen or what they may have been involved in the past. But, Barb, if I could just interrupt for a second. But the tipster's description of what would be found at the barbershop was corroborated. There were things found at the barbershop that corroborated what the tipster had said. Is that not correct? I would say only very minimally did the information found at the barbershop corroborate. What the tipster said is there was marijuana being sold, and I think it's a mischaracterization by the government to say that there's proof of him selling at the barbershop. What was found was two ounces of marijuana in Mr. Hurd's pockets. There was no indication he was selling that marijuana. In fact, as I stated, that marijuana is such a small quantity that he can't even be subjected to prosecution for that amount because it is a minor misdemeanor in Ohio and only subject to essentially a citation for that. And there was no indication of any... Yes, Judge. What about the car? Your client's car had been observed at the residence also. Is that not correct? Yes, there was a vehicle at the residence that was registered to Mr. Hurd, but there was no corroboration by any of the surveillance that it was Mr. Hurd that left the car there. There was no indication that that registration, that the car was registered to that address. In other words, there was no proof that that was Mr. Hurd's address given in the registration. And there was surveillance of that home, and Mr. Hurd was never seen in or around that home. So really the only connection was a car parked outside that was registered in his name. Not enough of a corroboration that would be needed to connect up the very minor criminal activity observed at the barbershop to the residence. And that's the issue here is that the anonymous tipster's information was corroborated only in a very small way and not to the place that was being searched, to another business. Mr. Hurd would argue here that if anything, the observations found at the barbershop would cause a reasonable officer to have doubt about the validity of the confidential informant's information. In other words, the confidential informant is saying that, excuse me, the anonymous tipster, I've even made a mistake, the anonymous tipster is putting forth evidence that there is a drug-saling operation going on at the barbershop, yet the only thing the officers find there is a few hundred dollars and a few ounces of marijuana. They don't find anything else that's indicative of an operation that was explained by the anonymous tipster. Again, this would cause great concern in the mind of a reasonable officer, and make him think about whether or not the information provided by the tipster was correct. And in fact, that's sort of what we've seen here, is that the officer hesitated in asking for a search warrant of the Hadley address, likely because all the information provided by the tipster supported the search of the business, and the officer believed, rightfully so, that there was an information to support the search of the business. But when nothing was really found there to essentially support the anonymous tipster's information that there was drug sales going on, the officer basically was on a fishing expedition and attempting to search the Hadley home. So our position here is that the other thing the court should look at is the atemporal nature of the information provided by the anonymous tipster. In other words, it wasn't that the anonymous tipster said, I saw guns, marijuana, and cash at that residence yesterday or last week. There was no indication as to when that was seen. So we may have a situation that, as outlined in a lot of the other cases we're looking at, where it could have been eight months, it could have been 12 months, it could have been a period of time that would have made this stale, and, again, a reasonable officer wouldn't have a reason to rely on information that was even eight months old as far as connecting the information and evidence as to contraband being found at the residence to the details provided by the anonymous tipster. Counsel, I have a question relative to the unidentified informant versus anonymous informant. It's certainly clear that as far as the affidavit goes with an unidentified informant, but that's frequently the case in search warrants. In the proceedings relative to the motion to suppress in the district court, did the government at some point or did you establish on the record that they did not know at the time and still don't know who this person was? I do not believe it was established on the record that the government or the officer knew the name of the confidential informant, or the anonymous tipster, sorry. You're saying it wasn't established? Yes, exactly. Okay, thank you. We don't know for sure that this is an anonymous informant. No, we don't have any information to believe that the name was known, therefore it was an anonymous tipster for all intents and purposes. There's no reason to assume that the officer knew the name of the person or knew the reliability of the person. And that's exactly what the authority says, is that if we look at the Pelton case, no reasonable officer would afford much weight to an anonymous tipster statement. And that's what we have here. We have an anonymous tipster statement, and we have an officer that unreasonably relied on those statements without getting really anything in the way of corroboration as it related to the Hadley Road address. As I've said, the information provided arguably disputes the validity of the anonymous tipster's information, because there wasn't anything indicative of a large-scale drug operation going on at the business, as was said. Did Officer Longworth at any point testify during the suppression proceedings? He did. Well, he could have been asked whether you want to reveal it or not, do you know the informant? He could have been asked whether it was just an anonymous phone call that came in, couldn't he? True enough, yes, Your Honor. Okay, thank you. And I believe that the government agrees and concedes in their brief that this person must be taken as an anonymous tipster rather than a confidential informant whose reliability we know something about. So essentially we have an officer relying on unreliable information, on something that's from an anonymous tipster. So our position here is that the likely reality is that we've had an atemporal, acontextual, anonymous tip that led to only a finding of a non-arrestable amount of marijuana on someone that was miles away from the Hadley Road address, that this officer could not then rely in good faith on a search warrant that was issued to residents when they observed nothing with regard to Mr. Hurd directly tying him to that residence or even indicating that there were any drug sales going on in or around the residence or that there's anything being stored in the residence that would be part and parcel with the drug sales that were alleged by this anonymous tipster. So for those reasons, we're asking that the court affirm the trial court. Thank you. Mr. Hendy, your rebuttal. Yes, Your Honor. Thank you. To begin, just to follow up on the questions Judge Guy posed regarding the identity of the informant, the officer Longworth, as my colleague said, did testify at the suppression hearing, and the government's view would be that it is somewhat ambiguous as to what the record actually reflects. It is true, I can say, even if it's not reflected in the record, that the informant was not anonymous, and Officer Longworth testified, I believe at page, the record ID would be 231 to page 233, that Officer Longworth talked with the informant on multiple occasions in the weeks leading up to the arrest, and that was on multiple times. But as the government explained in the briefing, even if the informant were treated initially as a tipster, the affidavit goes on to explain why the tip was corroborated and thus reliable, at least, at the very least, for purposes of the Leon exception. This was not a bare-bones affidavit in which the police just took the tip at face value and proceeded to secure a search warrant. Rather, there was independent investigation that was fruitful, that on the same day traced Mr. Hurd to the business where the informant said he would be distributing drugs and found multiple bags of marijuana on his person. And while opposing counsel talks about the quantity, as the district court did correctly find, the fact that there were multiple bags on his person is at least indicative of trafficking as opposed to personal use. And the search of the Glenway Avenue businesses bolstered that conclusion, where the officers found electronic scales, packaging equipment, ammunition, and gun paraphernalia that seemed somewhat out of place for a barbershop or athletic store. So even if you treat the informant as initially unreliable and anonymous, the information provided by that person was deemed credible and corroborated by the investigation. And also that goes to the fact that the defendants resided at the residence. The informant specifically said that the Hadley Road residence was the residence of Mr. Hurd and Mr. McCoy, and that was corroborated, at least in part, by the vehicle registered to Mr. Hurd parked in the driveway that same day. That, for purposes of the Leon good faith exception, that is sufficient. This court has made clear that it really is a low standard of any connection, however slight, tying the criminal activity to the place to be searched is sufficient. That standard is met here. Same goes with the opposing counsel's arguments with respect to staleness. True enough that the affidavit doesn't specify many things in terms of timing, but the fact that the corroboration occurred on the same day, that it does not matter that the age of their prior convictions is not in the affidavit when Mr. Hurd was found with trafficking with multiple bags of marijuana on the same day. As the district court correctly found with respect to staleness, there was other factual allegations in the affidavit that dispelled any of those concerns. Unless the panel has any further questions, the government will rest on its griefs and respectfully request that the court reverse the district court's order. Thank you. Thank you, counsel. A case will be submitted. Stephanie? Yes. If you could just verify when the attorneys have disconnected. Of course. The attorneys have disconnected, it is just the judges and yourself. Okay, if you could place the judges in a separate sub-conference now a private sub-conference, and I'll disconnect from the courtroom. All right. It's private right now. There's no attorneys on the line, so if you wanted to disconnect, it would just be the judges. I'll just disconnect and the judges can consult privately. Of course. Thank you. Thank you, Lance. Thank you, Judge. Thank you.